IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE ATLAS ROOFING CORPORATION CHALET SHINGLE PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2495<br>1:13-md-2495-TWT |
| WOLFPEN II PLANNED COMMUNITY HOMEOWNERS ASSOCIATION, INC., on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ATLAS ROOFING CORPORATION,<br><br>    Defendant. | <br><br><br><br><br><br>CIVIL ACTION FILE<br>NO. 1:13-CV-4208-TWT |

**OPINION AND ORDER**

This is a multi-district action arising out of the marketing and sale of allegedly defective roofing shingles. It is before the Court on the Defendant Atlas Roofing Corporation's Motion for Judgment on the Pleadings [Doc. 4] as to Count III, Count IV, and Count V of the Plaintiff Wolfpen II Planned Community Homeowners Association, Inc.'s Amended Complaint. For the reasons set forth below, the

Defendant Atlas Roofing Corporation's Motion for Judgment on the Pleadings [Doc. 4] is GRANTED in part and DENIED in part.

## I. Background

The Plaintiff Wolfpen II Planned Community Homeowners Association, Inc. is a purchaser of the Atlas Chalet Shingles ("Shingles"), which are designed, manufactured, and sold by the Defendant Atlas Roofing Corporation ("Atlas").[1] The Defendant represented and continues to represent – in marketing material and on the Shingles packaging – that the Shingles meet applicable building codes and industry standards.[2]

The Plaintiff claims that the Shingles are defective due to a flaw in the manufacturing process. This process – which allegedly does not conform to applicable building codes and industry standards – "permits moisture to intrude into the Shingle creating a gas bubble that expands when the Shingles are exposed to the sun resulting in cracking and blistering of the Shingles."[3] The Plaintiff filed suit in the U.S. District Court for the Western District of North Carolina,[4] asserting claims for: breach of the

---

[1]   Am. Compl. ¶ 2.

[2]   Am. Compl. ¶¶ 8-9, 55.

[3]   Am. Compl. ¶ 40.

[4]   "[I]n multidistrict litigation under 28 U.S.C. § 1407, the transferee court applies the state law that the transferor court would have applied." In re Conagra

express warranty (Count I), breach of the implied warranties of merchantability and fitness for a particular purpose (Count II), negligence (Count III), and unfair and deceptive acts and practices (Count IV). The Plaintiff seeks damages, litigation expenses, and equitable relief.[5] The Defendant moves to dismiss Count III, Count IV, and the Plaintiff's request for equitable relief.

## II. Legal Standard

A "motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."[6] A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[7] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and

---

Peanut Butter Products Liab. Litig., 251 F.R.D. 689, 693 (N.D. Ga. 2008); see also In re Temporomandibular Joint (TMJ) Implants Products Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Here, both parties appear to agree that North Carolina law governs the Plaintiff's state law claims.

    [5]    The Plaintiff's request for equitable relief was labeled Count V.

    [6]    Hopkins v. DeVeaux, 781 F. Supp. 2d 1283, 1289 n.4 (N.D. Ga. 2011).

    [7]    Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

unlikely."[8] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[9] Generally, notice pleading is all that is required for a valid complaint.[10] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[11]

### III. Discussion

**A. Injunctive and Declaratory Relief**

The Plaintiff requests that the Court issue an injunction mandating that the Defendant:

1. "[N]otify owners of the defect,"[12]

---

[8] Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

[9] See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[10] See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[11] See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S. Ct. at 1964).

[12] Am. Compl. ¶ 118.

2. "[R]eassess all prior warranty claims and pay the full costs of repairs,"[13] and

3. "[P]ay the costs of inspection to determine whether any Class member's Shingles needs replacement."[14]

The Plaintiff also requests that the Court issue a declaratory judgment stating:

1. "The Shingles have a defect which results in premature failure,"[15]
2. "[The Defendant's] warranty fails of its essential purpose,"[16] and
3. "[The Defendant's] warranty is void as unconscionable."[17]

To begin, the Plaintiff's request for injunctive relief must be dismissed. Injunctive relief is only appropriate "when [a] legal right asserted has been infringed," and there will be irreparable injury "for which there is *no adequate legal remedy*."[18] Here, the Defendant argues – correctly – that the Plaintiff does not even allege that legal remedies would be inadequate. Monetary damages would sufficiently compensate the Plaintiff for the Shingles that have blistered and/or cracked. In response, the Plaintiff argues that it is allowed to plead alternative and inconsistent

---

[13] Id.

[14] Id.

[15] Id.

[16] Id.

[17] Id.

[18] Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1117, 1127 (11th Cir. 2005) (emphasis added).

claims.[19] But the problem here is not that the Plaintiff's request for injunctive relief is inconsistent with the other claims, it is that the Plaintiff has failed to state a plausible claim for injunctive relief to begin with.[20]

To receive declaratory relief, however, the Plaintiff does not have to establish irreparable injury or the inadequacy of legal remedies.[21] In moving to dismiss the claim for declaratory relief, the Defendant first argues that the Plaintiff does not have standing because the requested declarations will not redress its injury.[22] To satisfy the constitutional case-or-controversy requirement, "[a] plaintiff must allege personal

---

[19]   Pl.'s Resp. Br., at 4.

[20]   As a technical matter, the Court must dismiss the Plaintiff's first requested injunction – that the Defendant must notify owners of the defect – on jurisdictional grounds. "[S]tanding is a threshold jurisdictional question which must be addressed prior to . . . the merits of a party's claims." Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (internal quotation marks omitted). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." Id. "To have Article III standing to pursue injunctive relief . . . a plaintiff must have . . . an injury in fact that is capable of being redressed by the injunction." Virdi v. Dekalb Cnty. Sch. Dist., 216 Fed. Appx. 867, 871 (11th Cir. 2007). Here, the Defendant correctly notes that the Plaintiff would not benefit from this injunction. If, during this litigation, it is established that the Shingles are indeed defective, it is unclear what the Plaintiff would gain from having the Defendant simply notify it of this fact.

[21]   See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 241 (1937) ("[A]llegations that irreparable injury is threatened are not required."); Katzenbach v. McClung, 379 U.S. 294, 296 (1964) ("Rule 57 of the Federal Rules of Civil Procedure permits declaratory relief although another adequate remedy exists.").

[22]   Def.'s Mot. to Dismiss, at 12-13.

injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[23] The Plaintiff may establish redressability if it shows that the "practical consequence" of the declaratory relief "would amount to a significant increase in the likelihood that the [Plaintiff] would obtain relief that directly redresses the injury suffered."[24] Here, the requested declarations – e.g., that the Shingles are defective – would make it more likely that the Plaintiff would obtain the necessary relief from the Defendant because it would establish an essential component to liability. And although the Plaintiff's remaining claims may provide more direct relief, the Declaratory Judgment Act allows plaintiffs to seek a declaration of rights "whether or not further relief is or could be sought."[25]

The Defendant then argues that the Court ought to use its discretion to decline the Plaintiff's declaratory relief request because it overlaps with other claims brought in this action.[26] For example, the Defendant argues that many of the Plaintiff's other claims will require a determination as to whether the Shingles were defective. The "Declaratory Judgment Act has been understood to confer on federal courts unique

---

[23]    Allen v. Wright, 468 U.S. 737, 751 (1984).

[24]    Utah v. Evans, 536 U.S. 452, 464 (2002).

[25]    28 U.S.C. § 2201.

[26]    Def.'s Mot. to Dismiss, at 13.

and substantial discretion in deciding whether to declare the rights of litigants."[27] In the declaratory judgment context, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."[28] The "range of considerations available to the district court in deciding whether to entertain the declaratory action is vast."[29] The Eleventh Circuit "has previously recognized convenience of the parties . . . as relevant."[30] Here, the Plaintiff's argument is that – assuming it successfully obtains class certification – there may be class members whose Shingles have not yet blistered or cracked. Consequently they will not have ripe claims for breach of warranty. Thus, there will be no redundancy for these class members because – at the time of litigation – they will *only* qualify for declaratory relief.[31] This is a permissible purpose for seeking

---

[27] Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).

[28] Id. at 288.

[29] Manuel v. Convergys Corp., 430 F.3d 1132, 1137-38 (11th Cir. 2005).

[30] Id. at 1135.

[31] The Seventh Circuit explained the mechanics of such an approach when it affirmed a district court's decision to certify two classes in a products liability suit:

> The court split the purchasers of windows into two groups: those who have replaced their windows, and those who have not. Those who have replaced their windows are properly members of the (b)(3) class because they require the award of damages to make them whole. Those who have not replaced their windows but might in the future because of the purported design flaw are

declaratory relief.[32] And given that the Court will have to resolve nearly identical factual issues with the other claims, it would be an efficient use of judicial resources to permit this declaratory judgment claim.

Finally, the Defendant argues that the Plaintiff's declaratory judgment claim must be dismissed because it abridges the Defendant's right to a jury trial.[33] But as the Eighth Circuit Court of Appeals has explained, "[a] litigant is not necessarily deprived of a jury trial merely because it is a party to a declaratory judgment action . . . if there would have been a right to a jury trial on the issue had it arisen in an action other than one for declaratory judgment, then there is a right to a jury trial in the declaratory

---

properly members of a (b)(2) class. Such purchasers would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows *when they manifest the defect*, or final equitable relief.

Pella Corp. v. Saltzman, 606 F.3d 391, 395 (7th Cir. 2010) (emphasis added).

[32] See Hardware Mut. Cas. Co. v. Schantz, 178 F.2d 779, 780 (5th Cir. 1949) ("The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty."); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950) ("The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked.").

[33] Def.'s Mot. to Dismiss, at 15-16.

judgment action."[34] Accordingly, the Plaintiff may pursue its claim for declaratory relief for now.

**B. Negligence**

Under North Carolina law, the economic loss rule "prohibits the purchaser of a defective product from bringing a negligence action against the manufacturer or seller of that product to recover purely economic losses sustained as a result of that product's failure to perform as expected."[35] However, "where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract."[36] Here, the Plaintiff only adequately alleges an injury to the Shingles themselves. Although the Amended

---

[34] Northgate Homes, Inc. v. City of Dayton, 126 F.3d 1095, 1098-99 (8th Cir. 1997); see also Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959) ("[T]he Declaratory Judgment Act . . . specifically preserves the right to jury trial for both parties."); Simler v. Conner, 372 U.S. 221, 223 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action. The questions involved are traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions as petitioner requested . . . [and] the courts below erred in denying petitioner the jury trial guaranteed him by the Seventh Amendment.").

[35] Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 783 (4th Cir. 2012) (internal quotation marks omitted).

[36] Id. (internal quotation marks omitted).

Complaint contains a vague allegation that other property was damaged,[37] a party must do more than "tender[] naked assertion[s] devoid of further factual enhancement."[38]

In response, the Plaintiff first argues that there is no express contract between the Plaintiff and the Defendant; they were not in privity. Under North Carolina law, the economic loss rule only applies when "the plaintiff ha[s] [a] basis for recovery in contract or warranty."[39] However, "a direct contractual relationship in the sale of the product itself is not a prerequisite to recovery for breach of express warranty against the manufacturer."[40] When "the cause of action is based on breach of express warranty, directed by the manufacturer to the ultimate purchaser, lack of privity between the plaintiff-purchaser and the defendant-manufacturer is not a bar."[41] Here, the Plaintiff alleges that the Defendant issued an express warranty to the original

---

[37]   Am. Compl. ¶ 110.

[38]   Iqbal, 556 U.S. at 678.

[39]   Ellis, 699 F.3d at 786 (internal quotation marks omitted); see also Warfield v. Hicks, 91 N.C. App. 1, 10 (1988) (The economic loss rule does not apply when the purchaser has "no basis for recovery in contract or warranty.").

[40]   Alberti v. Manufactured Homes, Inc., 329 N.C. 727, 736 (1991).

[41]   Crews v. W.A. Brown & Son, Inc., 106 N.C. App. 324, 331 (1992) (internal quotation marks omitted); see also Williams v. Hyatt Chrysler-Plymouth, Inc., 48 N.C. App. 308, 313 (1980) (The "absence of contractual privity no longer bars a direct claim by an ultimate purchaser against the manufacturer for breach of the manufacturer's express warranty which is directed to the purchaser.").

purchaser of the Shingles (e.g., the builder),[42] and that the Plaintiff – the ultimate consumer – was an intended beneficiary.[43] Consequently, the Plaintiff may sue based on the express warranty issued to the original purchaser. Additionally, the Plaintiff acknowledges that it may sue based on the implied warranties of merchantability and fitness for a particular purpose.[44] Thus, because the lack of an "explicit contract does not affect [the Plaintiff's] ability to recover for [its] losses under a contractual theory,"[45] the economic loss rule applies.[46]

---

[42]   Am. Compl. ¶¶ 8, 19, 56.

[43]   Am. Compl. ¶ 84 ("Plaintiff and Class are third party beneficiaries of the contracts between [the Defendant] and Plaintiff's builders and Class Members' builders."). In addition, even without the privity exception for warranties, the Plaintiff could still sue as a third-party beneficiary of the express warranty: "It is well settled in North Carolina that where a contract between two parties is entered into for the benefit of a third party, the latter may maintain an action for its breach." Johnson v. Wall, 38 N.C. App. 406, 410 (1978). "If the third party is an intended beneficiary, the law implies privity of contract." Id.

[44]   Am. Compl. ¶¶ 84, 86.

[45]   Ellis, 699 F.3d at 786.

[46]   The Plaintiff's remaining arguments concerning the lack of an explicit contract merit little discussion. For example, the Plaintiff argues that because it could not negotiate the terms of the express warranty, that warranty cannot trigger application of the economic loss rule. Multiple courts have already rejected this argument. See Ellis, 699 F.3d at 786 ("We . . . do not believe that the fact that Appellants are downstream purchasers makes a difference in the analysis . . . [i]n *Moore* . . . the plaintiffs . . . had no occasion to bargain or consider the terms . . . yet . . . the [economic loss rule] . . . barred the plaintiffs' negligence claim . . . ."); Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 795-96 (E.D.N.C. 2009) (The "sale of

The Plaintiff then argues that "building code violations . . . are . . . excepted from the [economic loss rule]."[47] In support, the Plaintiff points out that the duty to exercise care in performing residential construction exists independent of a contract.[48] The Court does not follow the Plaintiff's reasoning. It is unclear how, by establishing the breach of an independent duty, the Plaintiff has insulated its claim from the economic loss rule. The rule expressly applies to independent torts where a party is seeking to recover only for economic losses.[49] The Plaintiff cites to violations of the building code in order to establish a negligence claim, which is a tort, and so that

---

a product with a limited warranty that covers the down-the-stream owner of the product . . . does not open [the defendant] to a negligence claim for purely economic loss under North Carolina law once the product is sold to a third party, incorporated into the new home, and allegedly injures itself."). The Plaintiff also argues that the express warranty was not a basis of the bargain when it received the Shingles, which is a requirement for creating an express warranty in North Carolina. Again, it may be true that no express warranty was created between the Plaintiff and the Defendant. The argument, however, is that the Plaintiff may sue on the express warranty created between the Defendant and the original purchaser for whom the express warranty *was* a basis of the bargain.

[47] Pl.'s Resp. Br., at 17.

[48] Pl.'s Resp. Br., at 17 ("The duty exists independent of the contract. Existence of a contract may . . . establish that the parties owed a duty to each other to use reasonable care in performance of the contract, but it is not an exclusive test of the existence of that duty.") (quoting Oates v. Jag, Inc., 314 N.C. 276, 279 (1985)).

[49] See, e.g., Moore v. Coachmen Indus., Inc., 129 N.C. App. 389, 401 (1998) ("North Carolina has adopted the economic loss rule, which prohibits recovery for economic loss in tort.").

claim is subject to the economic loss rule. Accordingly, the Plaintiff's negligence claim should be dismissed.

## C. North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")

The Plaintiff claims that the Defendant violated the UDTPA "when, in selling and advertising the Shingles, [the Defendant] failed to give Plaintiff . . . adequate warnings and notices regarding the defects in the Shingles which [the Defendant] knew or should have known of this defect."[50] To state a claim under the UDTPA, "a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff."[51] To be clear, however, "a mere breach of contract claim is not unfair or deceptive . . . absent substantial aggravating circumstances."[52] In fact, "[a] breach of contract, *even if intentional*, is insufficient to state a UDTPA claim."[53]

Here, the Plaintiff has failed to allege substantial aggravating circumstances sufficient to state a UDTPA claim. The Plaintiff alleges that the Defendant knowingly

---

[50] Am. Compl. ¶ 113.

[51] Ellis, 699 F.3d at 787 (internal quotation marks omitted).

[52] Id. (internal quotation marks omitted).

[53] Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 478 (E.D.N.C. 2013) (emphasis added).

sold it defective Shingles, which is essentially a reiteration of the breach of warranty claim. Other courts, faced with similar facts, have reached the same conclusion. For example, in Ellis v. Louisiana-Pacific Corporation, the plaintiffs asserted a UDTPA claim against the defendant based upon the latter's sale of defective Trimboard, "a composite building product designed and marketed for use as exterior trim around windows and doors."[54] The plaintiffs alleged that the defendant "engaged in unfair or deceptive acts or practices . . . when, in selling . . . the Trimboard . . . [the defendant] failed to give [the plaintiffs] . . . adequate warnings and notices regarding the defect in the Trimboard . . . despite the fact that LP knew or should have known of this defect."[55] The Fourth Circuit concluded that the plaintiffs had failed to state a UDTPA claim:

> Appellants alleged . . . [that the defendant] fail[ed] to give adequate warnings and notices about the allegedly defective quality of Trimboard. . . . [This] allegation simply re-couches [the plaintiffs'] breach of warranty claim. But North Carolina has held that a breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain a UDTPA claim. . . . In short, [the plaintiffs] allege that [the defendant] knew that Trimboard would not live up to the terms of the warranty and should have disclosed this fact to consumers, but this is simply another way of claiming that [the defendant] breached its express warranty to consumers.[56]

---

[54] Ellis, 699 F.3d at 780.

[55] Id. at 781.

[56] Id. at 787 (internal quotation marks omitted).

Likewise, in <u>Yancey v. Remington Arms Co., LLC</u>, the plaintiffs asserted several claims against Remington based upon the latter's sale of an allegedly defective semi-automatic rifle.[57] To establish a UDTPA claim, the plaintiffs alleged that "despite Remington's knowledge of the defect in the . . . semi-automatic rifle, Remington concealed these problems, and continued to misrepresent the quality, safety and value of the product."[58] The court rejected this claim:

> Plaintiffs have simply not alleged substantial aggravating circumstances sufficient to state a UDTPA claim. Plaintiffs allege that Remington's business practices in . . . marketing . . . the . . . semi-automatic rifle as a . . . safe . . . product . . . free from defects while misrepresenting its safety and value constitute unfair or deceptive acts within the meaning of the UDTPA. These allegations amount to a restatement of Plaintiffs' breach of warranty claims. . . . Plaintiffs allege that Remington knew that the . . . semi-automatic rifle . . . would not live up to the terms of the warranty and should have disclosed this fact to consumers. This allegation is simply another way of claiming that Remington breached its express warranty to consumers.[59]

---

[57] <u>Yancey v. Remington Arms Co., LLC</u>, No. 1:10CV918, 2013 WL 5462205, at *2 (M.D.N.C. Sept. 30, 2013) report and recommendation adopted in part sub nom. <u>Maxwell v. Remington Arms Co., LLC</u>, No. 1:10CV918, 2014 WL 5808795 (M.D.N.C. Nov. 7, 2014).

[58] <u>Id.</u> at *9 (internal quotation marks omitted).

[59] <u>Id.</u> at *10 (internal quotation marks omitted).

Similarly, here, the Plaintiff is alleging that the Defendant knew the Shingles were defective and should have disclosed this prior to the sale. Like the plaintiffs in Ellis and Yancey, the Plaintiff is simply re-couching its breach of warranty claim.

In response, the Plaintiff argues that in Coley v. Champion Home Builders Co.,[60] which had "similar facts to those at bar, the North Carolina Court of Appeals allowed a party's UDTPA claim to proceed at the pleadings stage."[61] The issue in that case, however, was not whether the plaintiffs had adequately alleged "unfair or deceptive" acts or practices. The court made it clear that "[t]he sole issue argued by the parties . . . is whether plaintiffs have made a sufficient allegation of actual injury to survive a motion to dismiss."[62] Thus, Coley does not help the Plaintiff. The UDTPA claim should be dismissed.

### D. Equitable Estoppel

In the Amended Complaint, the Plaintiff claimed that the Defendant is equitably estopped from arguing that the Plaintiff's claims are time-barred. The Defendant, in its Motion to Dismiss, argues that the Plaintiff's allegations do not support an equitable estoppel argument. There is no reason to resolve this issue now. In moving

---

[60] 162 N.C. App. 163 (2004).

[61] Pl.'s Resp. Br., at 21.

[62] Id. at 165.

to dismiss, the Defendant does not argue that the Plaintiff's claims are time-barred. Thus, the Court need not address the merits of the Plaintiff's estoppel arguments at this stage of the litigation.

## IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Defendant Atlas Roofing Corporation's Motion for Judgment on the Pleadings [Doc. 4].

SO ORDERED, this 24 day of June, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge